NOT DESIGNATED FOR PUBLICATION

Nos. 127,629
127,630

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EMANUEL ROBINSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument. Opinion filed October 31, 2025. Sentences vacated and case remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM: Emanuel Robinson timely appeals the district court's calculation of his criminal history score and the denial of jail credit. Robinson pled no contest to two counts of aggravated battery for acts committed against correction officers and was found guilty. The district court at sentencing found Robinson's criminal history score was A. Robinson now claims the district court erred in finding three of his prior Missouri offenses to be person felonies, which elevated his criminal history score. Robinson also asserts the district court erred in denying him jail time credit for the time he was incarcerated in Kansas during the pendency of his aggravated battery cases.

1

After an extensive review, we find the district court incorrectly calculated Robinson's criminal history score. However, we cannot tell from the record on appeal if Robinson is entitled to jail credit. The district court failed to make a finding establishing whether Robinson was in federal custody and temporarily transferred under federal authority to resolve the aggravated battery cases or if he was held in Leavenworth County jail and Larned State Hospital solely pending the aggravated battery convictions. We vacate Robinson's sentences and remand for the district court to resentence Robinson with his correct criminal history score and to calculate his jail time credit, if any, in accordance with the statute governing jail time credit.

FACTUAL AND PROCEDURAL BACKGROUND

Robinson pled no contest to two counts of aggravated battery, severity level 7 person felonies, for acts committed in 2017, 2018, and 2019 that stemmed from two separate cases—18-CR-599 and 19-CR-435. Both offenses were committed against corrections officers while Robinson was serving his federal sentence in the federal penitentiary at Leavenworth. In exchange for Robinson's pleas, the State dismissed the remaining charge in 19-CR-435.

Robinson filed written objections to his presentence investigation (PSI) report, and the district court twice continued Robinson's sentencing hearing to work out issues with his criminal history. Based on an amended PSI report, the district court found Robinson had a criminal history score of A. Robinson believed he was entitled to jail credit for time spent in custody pending the disposition of the two aggravated battery cases. The district court noted the PSI report showed Robinson was entitled to zero days of jail credit and explained that if Robinson received jail credit while he was in custody at the federal penitentiary, then he was probably not entitled to credit in these cases.

The district court sentenced Robinson to 32 months' imprisonment for each conviction and ordered the sentences to run concurrent with each other but consecutive to Robinson's federal sentence and any other prior cases. Additional facts are set forth as necessary.

ANALYSIS

*Jail Credit*

Robinson argues the district court erred in refusing to give him jail credit for the time spent incarcerated in Kansas pending resolution of his two aggravated battery convictions. He further claims the State failed to prove he received jail time credit for his federal sentence for time spent in Kansas custody. Robinson asks us to reverse the district court's order refusing jail time credit and to award at least 823 days of jail credit.

The right to jail time credit is statutory, and we have unlimited review over questions of statutory interpretation. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. When a statute is plain and unambiguous, we are not to speculate about the legislative intent behind that clear language. We should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

The jail credit statute in effect at the time Robinson committed his crimes, K.S.A. 21-6615(a), stated in relevant part:

> "In any criminal action in which the defendant is convicted, the judge, if the
> judge sentences the defendant to confinement, shall direct that for the purpose of
> computing defendant's sentence and parole eligibility and conditional release dates

thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

In *State v. Ervin*, 320 Kan. 287, 311, 566 P.3d 481 (2025)—which was decided while this appeal was pending—our Supreme Court interpreted the relevant version of K.S.A. 21-6615(a), before it was amended in 2024, and found the statute "required a district court to award an allowance for all time spent incarcerated 'pending the disposition of *the* defendant's case.'" Our Supreme Court further explained the language of the statute "required the district judge to award one day of credit for each day that [the defendant] was incarcerated pending disposition of [a criminal] case regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12.

We acknowledge *Ervin* became binding precedent while Robinson's appeal was pending. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013). As a result, *Ervin* now controls similar jail time credit cases. But the *Ervin* court did not address a scenario involving an inmate who was serving a sentence for a prior criminal conviction—including a federal sentence and conviction—and committed a new crime while incarcerated in federal prison. We question the logic of expanding the holding in *Ervin* to situations involving inmates who commit new criminal offenses while in prison serving sentences arising out of prior criminal convictions.

The factual circumstances here are distinguishable from those in *Ervin*. Ervin was not serving a prison sentence for prior crimes. Rather, Ervin was being held in jail on two separate criminal cases while awaiting disposition of the case that was the subject of his appeal. In other words, Ervin was in jail "pending disposition of" his criminal cases for which he was later incarcerated. 320 Kan. at 312.

4

Before Robinson committed the two aggravated battery offenses at issue here, he was serving a 305-month (approximately 25 years) sentence in federal prison. The record suggests Robinson began serving his federal sentence around March 2017. The State charged Robinson with aggravated battery for acts committed in December 2017. The State also charged Robinson with aggravated battery for acts committed in August 2018 and February 2019. In both cases, Robinson was already incarcerated in federal prison for actions that did not stem from his new aggravated battery offenses. But the record is unclear as to whether Robinson was still under federal custody and temporarily transferred to Leavenworth County jail and Larned State Hospital or if he was solely in custody in the Leavenworth County jail and Larned State Hospital pending the aggravated battery convictions. The record suggests Robinson was "temporarily transferred pursuant to the [Interstate Agreement on Detainers Act and] remain[ed] under primary jurisdiction of Federal authorities" in 19-CR-435. The record is unclear as to 18-CR-599. Regardless, at sentencing, the district court made no findings as to whether Robinson was still under federal custody pending the disposition of his aggravated battery charges.

We acknowledge another panel of our court recently issued an opinion in *State v. Martin*, 66 Kan. App. 2d ___, 2025 WL 2737152, at *3 (2025), in which it held that a defendant was not entitled to credit because he remained incarcerated in prison serving a preexisting sentence while awaiting the disposition of criminal charges in Leavenworth County for a crime he committed against a corrections officer at the Lansing Correctional Facility. Although we agree with the holding in *Martin*, this case presents a different factual scenario. Here, it appears that Robinson was not only serving his preexisting federal sentence at a federal penitentiary, but he also was held at different times in the Leavenworth County jail and Larned State Hospital awaiting the disposition of this case. If so, the district court needs to make factual findings addressing the time Robinson was being held in the Leavenworth County jail and in Larned State Hospital pending the disposition of the charges in this case.

If Robinson was still under the jurisdiction of federal authorities, it would be unreasonable and lead to an absurd result to award him with jail credit under K.S.A. 21-6615(a) or to expand the holding in *Ervin* to these facts and allow him to avoid punishment for his actions. See *State v. Bodine*, 313 Kan. 378, 401, 486 P.3d 551 (2021) (courts "must construe statutes to avoid unreasonable or absurd results"). But if jurisdiction was transferred and Robinson was held in the Leavenworth County jail and at Larned State Hospital solely pending disposition of the two aggravated battery convictions, he might be entitled to jail credit under *Ervin*. See 320 Kan. at 311.

We acknowledge that had Robinson been incarcerated for his new crimes after he had completed his federal prison sentence, he would be entitled to jail credit under *Ervin*. Accordingly, based on the plain language of K.S.A. 21-6615(a), we conclude the district court failed to make sufficient findings as to whether Robinson was in State custody pending disposition of his aggravated battery cases and, if he was, how many days of jail credit he is entitled to under *Ervin*. We remand to the district court to calculate Robinson's jail time credit, if any, in accordance with K.S.A. 21-6615.

*Criminal History Score*

Robinson next argues the district court erred in scoring three of his prior Missouri convictions as person felonies in calculating his criminal history score. Because the State repeatedly failed to properly prove Robinson's criminal history score, we agree. The parties do not dispute the three prior Missouri convictions at issue—first-degree robbery, second-degree domestic assault, and second-degree assault—were appropriately classified as felony convictions. The issue is whether the three prior Missouri convictions were properly classified as *person* felonies.

The district court considers prior out-of-state convictions in determining a defendant's criminal history score. K.S.A. 21-6811(e)(1). The determination of whether a

6

prior conviction should be designated as a person or nonperson offense involves interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq., which is a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Here, Robinson pled no contest to one count of aggravated battery committed in December 2017, and one count of aggravated battery committed in August 2018 and February 2019. The 2017 and 2018 versions of the statute governing person and nonperson classification of out-of-state offenses, K.S.A. 21-6811(e)(3), remained substantively unchanged. Compare K.S.A. 2017 Supp. 21-6811(e)(3), with K.S.A. 2018 Supp. 21-6811(e)(3). The relevant version of the statute provides:

> "The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2018 Supp. 21-6811(e)(3).

Our Supreme Court explained for an out-of-state offense to be comparable to a Kansas offense, "the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

*Second-degree Assault and Second-degree Domestic Assault*

Robinson argues his 2011 Missouri conviction of second-degree assault and his 2005 Missouri conviction of second-degree domestic assault should have been classified as nonperson felonies in calculating his criminal history score. Robinson contends both

7

Missouri offenses could be completed by an attempt to cause physical injury and Missouri's definition of attempt is broader than Kansas' definition of attempt.

With respect to the 2011 second-degree assault conviction, the State claims the crime occurred in 2007. Based on the PSI report, it is unclear when the crime was committed, and the record lacks other evidence confirming when the crime occurred. Regardless, Mo. Rev. Stat. § 565.060.1 remained unchanged from 2007 until 2016. Robinson was also convicted of second-degree domestic assault in 2005, for acts committed in 2003, in violation of Mo. Rev. Stat. § 565.073 (2003).

Mo. Rev. Stat. § 565.060 (2007) provides:

"1. A person commits the crime of assault in the second degree if he:

(1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or

(2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; or

(3) Recklessly causes serious physical injury to another person; or

(4) While in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself; or

(5) Recklessly causes physical injury to another person by means of discharge of a firearm; or

(6) Operates a motor vehicle in violation of subsection 2 of section 304.022, RSMo, and when so operating, acts with criminal negligence to cause physical injury to any person authorized to operate an emergency vehicle, as defined in section 304.022, RSMo, while such person is in the performance of official duties."

Mo. Rev. Stat. § 565.073 (2003) provides:

"1. A person commits the crime of domestic assault in the second degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, as defined in section 455.010, RSMo, and he or she:

(1) Attempts to cause or knowingly causes physical injury to such family or household member by any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation; or

(2) Recklessly causes serious physical injury to such family or household member; or

(3) Recklessly causes physical injury to such family or household member by means of any deadly weapon."

Both statutes are divisible as they each contain several alternative means to commit the same crime. See *State v. Dickey*, 301 Kan. 1018, 1037, 350 P.3d 1054 (2015). Neither the original nor the amended PSI reports reflect the subsection for which Robinson was convicted. The second-degree assault conviction under Mo. Rev. Stat. § 565.060 shows the assault was an armed action, which narrows the possible subsections under which Robinson could have been convicted but still fails to reflect under which subsection of the statute the conviction arose.

Because the statutes are divisible, the State could have provided limited documents from the case files to establish the specific subsections of the statutes under which Robinson was convicted. See *Dickey*, 301 Kan. at 1037-38. Here, the State did not submit any documents related to the 2007 second-degree assault conviction. The State submitted several documents to the district court related to the 2003 second-degree domestic assault proceedings, but the documents do not establish the specific subsection of the Missouri statute Robinson was convicted under.

The State, relying on *State v. Obregon*, 309 Kan. 1267, 444 P.3d 331 (2019), asks us to "remand to the district court for additional fact finding to determine if the specific divisible statutory acts are a comparable offense in Kansas." Robinson responds the State should not be allowed "a second bite at the apple" to present sufficient evidence when it already had an opportunity to provide the supporting documents to the district court and failed to do so.

In *Obregon*, our Supreme Court again explained when there are multiple alternative versions of the crime, the sentencing court can "'examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction.'" 309 Kan. at 1274. While the classification of prior out-of-state convictions is a question of law subject to unlimited review, the district court's finding as to whether the State met its burden by a preponderance of the evidence that the defendant committed a person crime must be supported by substantial competent evidence. 309 Kan. at 1275. In *Obregon*, the PSI report was the only evidence establishing the out-of-state conviction for criminal history purposes and, because the PSI report did not reflect the version of the offense Obregon committed, remand was necessary to allow the district court to make the appropriate classification. 309 Kan. at 1275.

Before Robinson's sentencing hearing, he filed an objection to the PSI report clearly alerting the State of its burden to prove up his criminal history. Robinson objected to four prior Missouri convictions—first-degree robbery, second-degree domestic assault, second-degree assault, and endangering the welfare of a child—claiming the PSI report did not contain sufficient information to determine if the Missouri convictions were properly scored as person felonies. Robinson specifically stated:

> "In particular, in reviewing the Missouri statutes cited by the PSI, most of them
> appear to be divisible in their construction. The PSI does not specify which subsection

> Defendant was convicted, thus a *Wetrich*-style analysis cannot be performed to determine if the elements of the Missouri offenses are identical to or narrower than their Kansas counterparts."

Robinson explained that unless the State provided documentation showing under which version of the Missouri statutes he was convicted, the PSI report should be amended, and the four prior Missouri convictions should reflect nonperson felonies.

The State responded, arguing the 2019 amendments to K.S.A. 21-6811 applied retroactively and a *Wetrich* analysis was no longer required to determine if a prior crime was a person or nonperson offense. The State explained: "The present presentence investigation report is accurate as to three of the charges, regardless of the lack of specific section of the convicting statute." The State acknowledged the child endangerment conviction should be classified as a nonperson offense.

At Robinson's sentencing hearing, he explained "beyond the motion that was filed by [Robinson's prior counsel objecting to his criminal history score]," Robinson was also making a more specific objection to the prior robbery conviction. Robinson wanted transcripts of his guilty plea in the robbery case because he claimed his guilty plea was taken in violation of his right to counsel. The district court continued the sentencing hearing.

Robinson then filed a written objection to his PSI report related only to the prior robbery conviction. The district court held a sentencing hearing and addressed the more recent PSI report objection specific to the robbery conviction. Robinson also pointed out his other pending objections to the two prior Missouri second-degree assault convictions. The State and the district court were prepared only to hear Robinson's objection to the prior Missouri robbery conviction, and the sentencing hearing was again continued.

11

On January 19, 2024, at the next sentencing hearing, the State entered into the record authenticated documents related to Robinson's prior Missouri robbery conviction and a judgment of guilty plea related to the second-degree domestic assault, though the judgment did not reflect to what section of the statute Robinson pled guilty. The State explained it would rest on its initial written responses arguing the prior Missouri robbery, domestic assault, and assault should all be considered person felonies. The district court did not specifically address the two prior Missouri assault convictions but found Robinson had a criminal history score of A as set forth in the PSI report.

On appeal, the State abandons its original position that K.S.A. 21-6811(e)(3), as amended in 2019, determines whether the prior convictions are person or nonperson felonies. Instead, the State now makes a *Wetrich* analysis. The State fails to explain why we should address its new argument for the first time on appeal, and we exercise our discretion not to do so here. See *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021).

Robinson points out *Obregon* was different than his case because Obregon did not object to his criminal history and Robinson did. However, this case is like *Obregon* in that the PSI report is the only item in the record establishing the prior Missouri convictions as part of Robinson's criminal history, and it does not reflect what version of the offense Robinson committed. See 309 Kan. at 1275-76. But Obregon never objected to his criminal history, and the State, therefore, never had an opportunity to submit additional documentation establishing by a preponderance of the evidence the defendant committed a person crime.

Here, Robinson's initial objection to the PSI report very clearly explained the divisibility issue and that a *Wetrich* analysis could not be conducted as a result. Robinson also confirmed at the original sentencing hearing that the other pending PSI report objections were still on the table. The State was on notice to provide appropriate

documentation establishing under which version of the Missouri statutes Robinson was convicted and failed to do so. We decline to give the State a second chance with a remand to the district court to produce more evidence. Because of the State's failure to prove Robinson's criminal history, we remand to the district court with directions to classify Robinson's two prior Missouri assault convictions as nonperson felonies and decline to address Robinson's other claims on why the assault convictions cannot be counted as person felonies in Kansas.

*Robbery*

Robinson also argues his 2001 Missouri robbery conviction should have been classified as a nonperson felony in calculating his criminal history score. The State contends the elements of aggravated robbery in Kansas were broader than the elements of first-degree robbery in Missouri; therefore, the district court did not err in classifying Robinson's prior Missouri conviction as a person felony. The State notes two panels of our court have come to competing conclusions as to whether a prior Missouri first-degree robbery conviction should be classified as a person or nonperson offense.

Notably, the original PSI report showed Robinson's prior 2001 Missouri conviction of first-degree robbery was a person felony. The State provided authenticated documentation showing the prior Missouri robbery conviction was based on an offense Robinson committed in 1999 and Robinson was convicted in 2001. After the State admitted Robinson's 2005 Missouri conviction of endangering the welfare of a child should be changed from a person to a nonperson felony for criminal history scoring, the PSI report was amended. In addition to changing the person designation on the child endangerment conviction, the amended PSI report also changed the first-degree robbery conviction from person to nonperson. Neither party seemed to notice the amended PSI report also changed the classification of the robbery conviction to a nonperson felony.

13

Mo. Rev. Stat. § 569.020 (1999) provided:

> "1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
> (1) Causes serious physical injury to any person; or
> (2) Is armed with a deadly weapon; or
> (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
> (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument."

Mo. Rev. Stat. § 569.010(1) (1999) defined "forcibly steals" as:

> "[I]n the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of:
> "(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> "(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft."

Just like the two prior second-degree assault charges, the relevant Missouri robbery statute was divisible, and the PSI report did not specify under which subsection Robinson was convicted. While the State provided additional authenticated documentation related to the robbery charge, the documents were used to establish Robinson was represented by counsel during those proceedings. The State failed to provide any documentation, authenticated or not, showing under which subsection of the statute Robinson was convicted. Again, Robinson's initial objection to the PSI report directly stated the divisibility issue and that a *Wetrich* analysis could not be conducted as a result. And, again, the State failed to produce the correct documents to show under what subsection Robinson was convicted, and we decline to give it another chance with a remand to the district court to produce more evidence. We remand to the district court

14

with directions to classify Robinson's prior Missouri robbery conviction as a nonperson felony. Because of the State's failure to produce the correct documents from Missouri, we decline to address whether Robinson's robbery conviction in Missouri is broader than a comparable aggravated robbery conviction in Kansas.

Given the State's repeated failure to produce Robinson's Missouri conviction records, all three of Robinson's prior Missouri convictions at issue now must be scored as nonperson felonies and his criminal history score changes from A to C. In each of Robinson's aggravated battery convictions, he would have one person felony for the other aggravated battery conviction and seven nonperson felonies. We remand to the district court for resentencing based on the correct criminal history.

Sentences vacated and case remanded with directions.